In re A.P. LIQUIDATING CO., f/k/a Apex Global Information Services, Inc., Debtor.

The Official Committee of Unsecured Creditors of Apex Global Information Services, Inc. and McTevia & Assoc., Inc., as Liquidating Agent of A.P. Liquidating Co., Plaintiffs,

v.

Qwest Communications Corp., Defendant.

Bankruptcy No. 00–42839–R.
Adversary No. 02–4559.

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

Oct. 1, 2002.

Basil T. Simon, Stephen P. Stella, Simon, Korachis, Stella & O'Connell, Detroit,

MI, Robert D. Gordon, Bloomfield Hills, MI, for Debtor.

Stephen E. Spence, Detroit, MI, U.S. Trustee.

*Opinion Regarding Motion to Dismiss or, in the Alternative, for Summary Judgment or Partial Summary Judgment*

STEVEN W. RHODES, Chief Judge.

This matter came before the Court on a motion to dismiss or, in the alternative, for summary judgment or partial summary judgment filed by defendant Qwest Communications. The plaintiffs filed an objection. The Court conducted a hearing on July 29, 2002, and took the matter under advisement. The Court now concludes that res judicata bars the plaintiffs' claims. Accordingly, Qwest's motion is granted.

### I.

On January 5, 1998, Qwest and Apex Global Information Services (AGIS) entered into a contract entitled Capacity IRU Purchase Agreement, pursuant to which Qwest agreed to provide AGIS with use of its fiber optic network. AGIS and Qwest also entered into related agreements entitled Collocation and Interconnection Agreement and Private Line Services Agreement, both dated January 5, 1998.

On February 25, 2000, AGIS filed its chapter 11 petition. The Creditors Committee was appointed on March 29, 2000. On April 12, 2000, the Court entered an order authorizing the employment of the firm of Jackier, Gould, Bean, Upfal & Eizelman, P.C. as counsel for the Committee.

On April 24, 2000, AGIS conducted an auction of substantially all of its assets. Telia Internet, Inc. was the successful bidder. The sale did not include the IRU Agreement. AGIS had rejected the IRU Agreement by order dated April 10, 2000.

On June 26, 2000, AGIS filed its Combined Plan and Disclosure Statement. The plan was confirmed August 9, 2000. Pursuant to the terms of the plan, McTevia & Assoc. was appointed as Liquidating Agent to conduct the liquidation of AGIS's assets, consummate the plan and administer the bankruptcy case post-confirmation.

On June 30, 2000, Qwest filed a proof of claim alleging a secured claim of $310 million. On May 1, 2001, the Liquidating Agent filed an objection to Qwest's proof of claim. On September 7, 2001, Qwest filed a motion to withdraw its proof of claim. A stipulated order authorizing Qwest's withdrawal of its claim was entered November 2, 2001.

On March 29, 2002, the Liquidating Agent and the Committee filed this adversary complaint against Qwest alleging breach of contract and fraud.

### II.

Qwest contends that because the plan and disclosure statement failed to disclose the potential cause of action against Qwest, the plaintiffs are barred by res judicata from bringing those claims now. Qwest asserts that had it known that the plaintiffs were going to bring suit against it, it would not have dismissed its $310 million proof of claim, which it is now barred from pursuing.

Qwest further asserts that the complaint is barred by the doctrine of judicial estoppel because the debtor specifically represented in its schedules that it did not have any contingent or unliquidated claims and reaffirmed that representation in its plan and disclosure statement. Qwest also argues that the complaint should be dismissed for failure to state a claim because

the plaintiffs have not stated a claim for breach of contract.

The plaintiffs contend that their claims against Qwest were preserved in both the plan and the order confirming the plan. The plaintiffs also rely on language in the stipulated order withdrawing Qwest's proof of claim, which, they assert, confirms that the Liquidating Agent may seek affirmative relief against Qwest. The plaintiffs also contend that res judicata does not apply because the Committee and Liquidating Agent are not in privity with the debtor.

The plaintiffs contend that the doctrine of judicial estoppel does not apply because the plaintiffs were not the proponents of the plan and therefore cannot be said to have taken a position in the plan which is inconsistent with their position taken now. The plaintiffs further argue that the debtor's rejection of the IRU Agreement does not bar their breach of contract claims.

### III.

■■■■ Pursuant to 11 U.S.C. § 1141(a), the effect of plan confirmation is to bind all parties to the terms of a plan of reorganization. *Still v. Rossville (In re Chattanooga Wholesale Antiques, Inc.),* 930 F.2d 458, 463 (6th Cir.1991). "Confirmation of a plan of reorganization by the bankruptcy court has the effect of a judgment by the district court and res judicata principles bar relitigation of any issues raised or that could have been raised in the confirmation proceedings." *Id.*

[A] claim [is] barred [by the res judicata effect of] prior litigation if the following elements are present: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their "privies"; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action;

and (4) an identity of the causes of action.

*Bittinger v. Tecumseh Prods. Co.,* 123 F.3d 877, 880 (6th Cir.1997). *See also Browning v. Levy,* 283 F.3d 761 (6th Cir.2002).

■■■■ The first requirement is met here. As a general rule, the "[c]onfirmation of a plan of reorganization constitutes a final judgment in bankruptcy proceedings." *Sanders Confectionery Prods., Inc. v. Heller Fin. Inc.,* 973 F.2d 474, 480 (6th Cir. 1992). *See also Browning,* 283 F.3d at 773.

■■■■ The plaintiffs argue that the second requirement is not satisfied because the Liquidating Agent and the Committee were not in privity with the debtor. However, the plaintiffs were themselves parties to the bankruptcy proceeding prior to confirmation, thus this is a "subsequent action between the same parties." Accordingly, the second requirement is satisfied.

The Court also notes that the Committee was actively involved in proposing the plan. A review of the fee application for the attorney for the Committee indicates that approximately 65 hours were billed for services related to the plan. Further, the fee application specifically states, "Applicant played a central role in negotiating and drafting the terms of the Plan and Confirmation Order[.]" (See First and Final Application of Jackier, Gould, Bean, Upfal & Eizelman, filed September 22, 2000, at 5.)

■■■■ As to the third requirement, the Court concludes that because the plaintiffs' claims are related to the chapter 11 bankruptcy proceeding, they should have been raised before plan confirmation. *See e.g., Browning,* 283 F.3d at 773. Because the claims should have been raised, they are precluded unless they were specifically reserved in the plan of reorganization or in the confirmation order. *D & K Props.*

*Crystal Lake v. Mut. Life Ins. Co.*, 112 F.3d 257, 260 (7th Cir.1997); *Browning*, 283 F.3d at 774 ("Res judicata does not apply where a claim is expressly reserved by the litigant in the earlier bankruptcy proceeding.").

■ Recognizing this, the plaintiffs assert that four provisions reserve its claim. First, the plaintiffs rely on the following reservation of claims in the plan:

> All of the Debtor's Claims are expressly preserved for the benefit of the creditors, and the proceeds of the Debtor's Claims shall be disbursed under this Plan. The Committee shall retain and may enforce any and all of the Debtor's Claims in the name of the Debtor.

See Plan at ¶ I.6.3(c).

However, "a general reservation of rights does not suffice to avoid res judicata." *Browning* at 774. A similar reservation of claims was found insufficient by the *Browning* court, which stated:

> [The debtor's] blanket reservation was of little value to the bankruptcy court and the other parties to the bankruptcy proceeding because it did not enable the value of [the debtor's] claims to be taken into account in the disposition of the debtor's estate. Significantly, it neither names [the defendants] nor states the factual basis for the reserved claims. We therefore conclude that [the debtor's] blanket reservation does not defeat the application of res judicata to its claims against [the defendants].

*Id.* at 775.

Accordingly, the Court concludes that the general reservation of rights in the plan is insufficient.

■ Second, the plaintiffs also rely on the following language in the plan:

> Qwest is claiming a security interest in the assets of the Debtor. Debtor contends that Qwest's security interest, if any, is limited to a purchase money security interest in the right of use of optical transmission capacity on the Qwest system. Debtor and Qwest are attempting to reach a negotiated settlement of their differences, but, failing that, Debtor will commence an adversary proceeding to determine this matter.

See Plan at ¶ III. D.

This language specifically states that an adversary proceeding to determine Qwest's claim will be filed only if the debtor and Qwest fail to reach a settlement regarding the claim. It makes no mention of a claim by the debtor against Qwest for breach of contract and fraud. Moreover, the debtor and Qwest did reach a settlement and Qwest withdrew its claim. Accordingly, the Court concludes that this language does not reserve the plaintiffs' claims against Qwest.

Third, the plaintiffs rely on this language in the confirmation order:

> Qwest Communications Corporation ("Qwest") has filed a proof of claim in the amount of $310,000,000, a portion of which claim Qwest asserts is secured. Debtor and the Committee dispute Qwest's claim. The Liquidating Agent shall reserve the sum of $4,000,000 from the funds in the estate to be held in reserve on account of Qwest's asserted secured claim. This $4,000,000 sum shall be held in reserve pending (a) further order of a court of competent jurisdiction, or (b) written consent of Qwest to the release of all or any portion of such funds. In addition, the Liquidating Agent shall reserve from any interim distribution to holders of unsecured nonpriority claims an amount sufficient to make a pro rata distribution to Qwest on account of its asserted claim, until such claim has been allowed or disallowed

pursuant to (a) further court order or (b) agreement of Qwest and the Liquidating Agent.

(See Confirmation Order at ¶ 8.)

Like the language in the plan, this provision in the confirmation order only addresses Qwest's claim against the debtor, which has been withdrawn. It makes no mention of a separate claim by the debtor against Qwest. Accordingly, it does not support the plaintiffs' position.

▮ Finally, the plaintiffs rely on this language in the stipulated order withdrawing Qwest's proof of claim:

Qwest's proof of claim is withdrawn with prejudice. Accordingly, Qwest shall not be entitled to any distribution from Debtor's bankruptcy estate. However, the parties agree, and it is hereby ordered, that Qwest shall not be precluded from raising by counterclaim or affirmative defense any of the issues set forth in its Proof of Claim as a defense to any affirmative relief sought or obtained by the Liquidating Agent on behalf of the Debtor's bankruptcy estate against Qwest, provided, however, that in no event shall any such counterclaim entitle Qwest to any affirmative recovery from the Debtor's estate, even if the amount of such counterclaim exceeds the amount of the Liquidating Agent's claims against Qwest.

(See November 2, 2001, Claim Withdrawal Order at ¶ 1.)

Although this language suggests that the Liquidating Agent may assert a claim against Qwest, the plaintiffs fail to explain how this stipulation can act to revive a claim previously barred by res judicata. Accordingly, the Court must conclude that the plan and confirmation order do not specifically reserve the plaintiffs' claim against Qwest.

▮ The final element of res judicata, that there be an identity of claims, is satisfied if "the claims arose out of the same transaction or series of transactions, or whether the claims arose out of the same core of operative facts." *Micro–Time Mgmt. Sys., Inc. v. Allard & Fish, P.C.* (*In re Micro–Time Mgmt. Sys., Inc.*), 1993 WL 7524, at *5 (6th Cir. Jan.12, 1993).

Here, the plaintiffs' allegation in their complaint that Qwest's breach of the IRU Agreement led to the debtor's bankruptcy clearly establishes the required "identity of claims." *See Sure–Snap Corp. v. State Street Bank and Trust Co.*, 948 F.2d 869, 875 (2d Cir.1991) (Identity of claims exist between an earlier Chapter 11 bankruptcy proceeding and a post-confirmation claim by the debtor that alleged that the actions of one of its creditors "forced [the debtor] into bankruptcy.").

Accordingly, the Court concludes that the elements of res judicata are satisfied with respect to the plaintiffs' claims against Qwest.

Because the Court concludes that res judicata bars the plaintiffs' claims, it is not necessary to address Qwest's other arguments.

An order dismissing the adversary proceeding will be entered.