In re AMAREX, INC., Debtor.
(Two Cases)

AMAREX, INC., et al., Plaintiffs,

v.

MARATHON OIL COMPANY, et al.

AMAREX, INC., et al., Plaintiffs,

v.

AZTEC SPECIALTY LEASING CO., et al., Defendants.

No. BK-82-2335-A. Nos. CIV-87-1603-W, CIV-87-1807-W and CIV-87-1780-W.

Adv. Nos. 84-565, 84-718.

United States District Court, W.D. Oklahoma.

July 12, 1988.

H.D. Binss, Jr., James N. Atkins, Richard E. Coulson, Rainey, Ross, Rice & Binns, Oklahoma City, Okl., Fletcher L. Yarbrough, Carrington, Coleman, Sloman & Blumenthal, John L. King, Rochelle, King & Balzersen, Dallas, Tex., for plaintiffs.

Evam B. Glick, Hutcheson, & Grundy, Houston, Tex., Jon H. Trudgeon, Jimane H. Mays, Speck, Philbin, Fleig, Trudgeon & Lutz, P.C., Richard C. Ford, Ray G. Moss, Frank L. Polk, Daugherty, Bradford, Fowler & Moss, Oklahoma City, Okl., Ann Van Bever, Haynes and Boone, Dallas, Tex., Leslie Forbes, Watson & McKenzie, Oklahoma City, Okl., for defendants.

## OPINION

**LEE R. WEST, District Judge.**

This bankruptcy proceeding was initiated by Amarex, Inc. and Amarex Funds of Delaware, Inc. (Amarex), in December 1982 under Chapter 11 of Title 11 of the United States Code. In 1984, Amarex filed over 250 adversary proceedings and sought pursuant to title 11, section 547 of the United States Code to recover certain alleged preferential payments to operators of jointly-owned wells for Amarex's proportionate share of operating costs incurred in connection with the drilling of such wells. In March 1986, The Honorable Richard L. Bohanon, United States Bankruptcy Judge for the Western District of Oklahoma, consolidated the adversary proceedings and then divided the defendants into two groups: the Consolidated Operator defendants (the Operators) and the Consolidated Non-operator defendants (the Nonoperators).

Judge Bohanon then proceeded to resolve those issues common to all adversary proceedings and on May 29, 1987, rendered the decision which is the subject of the instant appeals and cross-appeal. *In re Amarex, Inc.*, 74 B.R. 378 (Bankr.W.D.Okla.1987). The issues presented for this Court's review are:

(1) May Temex Energy, Inc., as successor to Amarex, maintain these adversary proceedings and recover preferential payments?

(2) Does the "45-day" rule of section 547(c)(2), eliminated by the Bankruptcy Amendments and Federal Judgeship Act of 1984, apply to these adversary proceedings?

(3) For purposes of section 547(b), in determining whether a transfer falls within the 90-day preference period, does the transfer of a check occur on the date of mailing or on the date of receipt?

(4) For purposes of section 547(c)(4), was new value extended to Amarex when the Operators made payments on behalf of Amarex and other Nonoperators to third party vendors who supplied goods and rendered services?

The Operators have appealed issues (1) and (2) and the Nonoperators have appealed issues (1), (2) and (3). Amarex has cross-appealed issues (3) and (4). Because these issues involve legal determinations, the Court has engaged in a de novo review of the law and the facts. *In re Branding Iron Motel, Inc.*, 798 F.2d 396 (10th Cir. 1986).

■ The first issue pertains to the authority of Temex Energy, Inc. (Temex) to maintain the adversary proceedings. Under Amarex's Third Amended Joint Plan of Reorganization (the Plan), which was confirmed on September 26, 1985, Amarex merged with Temex, a wholly-owned subsidiary of Templeton Energy, Inc. The Plan expressly provided in Article XX that all preferential payment claims that had been initiated by Amarex were "preserved and retained for enforcement" by Reorganized Amarex, the name then given to the entity created by the merger.

On November 27, 1985, the merger was judicially recognized and approved and it was further recognized that the entity that had been formed by the merger had been given a name: Temex. On December 4, 1985, the merger was again judicially acknowledged and it was stated by Order that Temex was "vested with the property and rights of Amarex and survive[d] as a wholly owned subsidiary of Templeton...."

After confirmation of the Plan, Temex began prosecuting the adversary proceedings which had been filed by Amarex. Its maintenance of these actions has been challenged in this appeal.

Prior to the 1978 revision of the Bankruptcy Code, avoidance actions such as the instant adversary proceedings could not be retained by the debtor and pursuit of the same was limited to a trustee or court-appointed examiner. 11 U.S.C. § 616(13) (repealed 1978). After 1978, avoidance actions could be retained and enforced by either the debtor, the trustee or a representative of the estate appointed for such purpose. 11 U.S.C. § 1123(b)(3)(B).

The right of Reorganized Amarex to pursue these actions was clearly preserved and

retained in the Plan. The Operators and Nonoperators have argued that while Temex (which is Reorganized Amarex) was designated by the Plan as the party to retain and enforce these adversary actions, the Bankruptcy Court never appointed Temex to the position of representative and that memorialization of the retention of the actions in the Plan and confirmation of the Plan by Judge Bohanon do not rise to the level of an appointment.

In *In re Sweetwater*, 55 B.R. 724 (D.Utah 1985), relied upon by the Operators and Nonoperators, the court found that "it would be contrary to the spirit of chapter 11 to hold that the 'appointment' of the representative could be by a unilateral declaration of the debtor ... [and that] it is the bankruptcy court—not the debtor—who makes the appointment." *Id.* at 730. The Court finds that such case is distinguishable from the instant case and that an "appointment" as contemplated by section 1123(b)(3)(B) has occurred in this instance. Temex is not the "stranger" found in *Sweetwater;* it is the entity which has evolved from the reorganization process and which is merely continuing prosecution of actions initiated by Amarex, the resulting benefits of which will redound in part to the unsecured creditors. The Court finds that the Orders issued on November 27 and December 4, 1985, clearly indicate that Temex should be permitted to pursue these adversary proceedings and to require a more formal judicial appointment would be to exalt form over substance.

■ The second issue raised by the Operators and Nonoperators pertains to the "45–day" rule. Under the Bankruptcy Amendments and Federal Judgeship Act of 1984 (the Act), the provision that preferential payments had to be made "not later than 45 days after such debt was incurred" was eliminated. *Compare* 11 U.S.C. 547(c)(2) (1981) with *id.* § 547(c)(2) (Supp. 1988).

The effective date of the Act was July 10, 1984, and it provided that "the Amendments ... shall become effective to *cases* filed 90 days after" July 10, 1984. 11 U.S.C. § 553(a) (emphasis added). Thus, the 45–day provision is not applicable to "cases" filed after October 8, 1984.

The instant controversy centers on the scope of the word "cases" as intended by the drafters of the Act. The Operators and Nonoperators have argued that the word "cases" refers to both adversary proceedings and bankruptcy cases and thus, the 45–day provision is not applicable in any adversary proceeding such as the instant ones filed after October 8, 1984, regardless of when the bankruptcy cases from which the adversary proceedings arose was commenced. Amarex has argued that the word "cases" does not refer to adversary proceedings and thus, the date the bankruptcy case was filed (and not the date the adversary proceeding which arose from such case was filed) is the operative date for determining if the 45–day rule is applicable.

A review of case law indicates that the latter argument has merit, *e.g., In re Sounds Distributing, Inc.*, 80 B.R. 749 (Bankr.W.D.Pa.1987); *In re W.L. Mead, Inc.*, 70 B.R. 651 (Bankr.N.D.Ohio 1986); *In re Chase & Sanborn Corp.*, 51 B.R. 736 (Bankr.S.D.Fla.1985), since the former "argument presupposes that Congress was unaware of the distinct meaning each of these terms has acquired in the bankruptcy law since the 1973 adoption of the bankruptcy rules, which first introduced adversary proceedings." *Id.* at 738. This Court finds that since the bankruptcy case which generated these adversary proceedings was filed in December 1982 prior to the effective date of the amendments, the 45–day rule which was then in force and effect remains applicable to these proceedings.

■ The third issue, the subject of the appeal by the Nonoperators and the cross-appeal by Amarex, concerns the delivery of certain checks and whether delivery occurs when the check is mailed, upon its receipt or when honored by the bank. The issue arises because these adversary proceedings involve payments which were mailed more than ninety days prior to the filing of the bankruptcy petition but which were received during the ninety-day preference period. In reviewing the parties' argument

and authority, the Court finds that transfer for purposes of section 547(c) occurs upon delivery and that delivery is accomplished upon receipt.

■ The final issue raised by the Nonoperators and Amarex pertains to whether new value was extended to Amarex when the Operators made payments on behalf of Amarex and other nonoperators to third party vendors. Amarex was engaged in the business of acquiring and developing oil and gas interests and in pursuit of such business, entered into joint operating agreements with the Operators. The Operators were obligated under such agreements to drill and operate the oil and gas wells and to render services on behalf of all Nonoperators. Amarex was obligated to the Operators under such agreements to pay their proportionate share of the costs incurred by the Operators. During the ninety-day preference period created by section 547(b), Amarex made payments under these joint operating agreements and it is these payments which are sought to be avoided.

The Operators seek to protect these payments by application of the "subsequent advance rule" found in section 547(c)(4). Such section provides that a payment to or for the benefit of a creditor may not be avoided to the extent that, after such payment, "such creditor gave new value to or for the benefit of the debtor ... not secured ... and on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor." 11 U.S.C. § 547(c)(4). "New value" as used in such section is statutorily defined as "money or money's worth in goods, services, or new credit ... but does not include an obligation substituted for an existing obligation." 11 U.S.C. § 547(a)(2).

Amarex and the Nonoperators have argued that new value was not extended by the Operators since Amarex was obligated to the Operators upon execution of the joint operating agreements. The Operators have contended that new value was extended to Amarex each time the Operators made payments to third party vendors

on behalf of Amarex and other Nonoperators.

Under the timing principle recognized in *In re White River*, 799 F.2d 631, 632 (10th Cir.1986), the Court finds that the significant dates are not those dates that the third party vendors provided goods and services but rather are those dates the Operators made payments to said vendors. Thus, the Court finds that new value was extended to Amarex on the dates the vendors were paid.

Based upon the foregoing, the Court finds that the Order of May 29, 1987, rendered by Judge Bohanon is AFFIRMED and that the instant appeals and cross-appeal are hereby DISMISSED.