In re PEN HOLDINGS, INC.,
et al., Debtors.

The Elk Horn Coal Company,
LLC, Plaintiff,

v.

Conveyor Manufacturing & Supply,
Inc., et al., Defendants.

No. 302–00979.
Adversary Nos. 304–0062; 304–0081; 304–
0085; 304–0087; 304–0089; 304–0093;
304–0101; 304–0102; 304–0106; 304–
0107; 304–0109; 304–0111; 304–0113;
304–0145; 304–0152; 304–0163; 304–
0196; 304–0200; 304–0215; 304–0216;
304–0224; 304–0230; 304–0234.

United States Bankruptcy Court,
M.D. Tennessee.

Sept. 17, 2004.

Barbara D. Holmes, David P. Cañas & Tracy M. Lujon, Harwell Howard Hyne Gabbert & Manner PC, Nashville, TN, for The Elk Horn Coal Co.

Linda Knight, Gullett Sanford Robinson & Martin, Nashville, TN, for Conveyor Mfg. & Supply, Rish Equipment Co., Refab Co., Raocat Rubbert, Inc., Bill's Electronics, Inc., Camden Park, Inc., Baker Hughes Mining Tools, Inc., Highland Machinery Corp., J.H. Fletcher & Co., Keystone Mountaineer Power Systems, Inc., Cecil I. Walker Mfg. Co., Browning–Ferris Industries and Tema Systems, Inc.

Ronald G. Steen and Robert Goodrich, Jr., Stites & Harbison PLLC, Nashville, TN, for TransAmerica Equipment Financial Services.

Marc McNamee and David Thompson, Neal & Harwell, Nashville, TN, for R & R Contractors, Inc., Boarders & Hinkle Construction Co., Guyan Heavy Equipment, Young's Equipment, Inc. and Young's Equipment Repair, Inc.

Margaret Behm, Dodson Parker & Behm, Nashville, TN, for B & M Repair, Inc.

Robin White, Mendes & Gonzales PLLC, Nashville, TN, for Airgas–Mid America, Inc., Airgas–Mountain States, Inc., Cobre Tire Co. and Hanson Aggregates Davon, Inc.

David W. Houston, IV, Greenebaum Doll & McDonald PLLC, Nashville, TN, for Metalcraft Mining Equipment Rebuilders, Inc.

## MEMORANDUM

KEITH M. LUNDIN, Bankruptcy Judge.

The issue in these consolidated adversary proceedings on motions to dismiss and for summary judgment is whether the confirmed Chapter 11 plan preserved preference actions from the *res judicata* effect of confirmation. Provisions in the Joint Plan that reserved avoidance actions under 11 U.S.C. § 547 are minimally sufficient for purposes of 11 U.S.C. § 1123(b)(3).

### FACTS

Pen Holdings, Inc. and five related entities [1] ("Pen") filed Chapter 11 petitions on January 24, 2002. Pen controlled the

1. Pen Coal Corporation, The Elk Horn Coal Corporation, River Marine Terminals, Inc., Pen Land Company, and Marine Terminals, Inc.

rights to approximately 200 million tons of Appalachian coal and with its 500 employees operated mines in West Virginia and Kentucky.

On February 25, 2002, the Debtors filed Schedules of Assets and Liabilities and Statements of Financial Affairs. Questions 3A of the Statements listed over 700 payments aggregating more than $160,000,000,[2] made by the Debtors during the 90–days preceding bankruptcy.

After a contentious year and one-half in Chapter 11, on August 12, 2003, a Joint Plan of Reorganization was filed by the Debtors, the Official Committee of Unsecured Creditors and the Secured Lending Group. On September 30, 2003, an amended Joint Plan was filed by the Co–Proponents. A Disclosure Statement was approved and on October 1, 2003, the Joint Plan, as amended, was confirmed. On November 25, 2003, the court entered an Agreed Order to Clarify Plan that resolved an ambiguity with respect to the name of the Reorganized Debtor, The Elk Horn Coal Company, LLC.[3]

The Joint Plan as confirmed defined "Avoidance Actions" at section 2.1.06:

[A]ctions and rights of action under Sections 510, 541, 544, 545 and 546 of the Bankruptcy Code, all preference claims pursuant to Section 547 ..., all fraudulent transfer claims pursuant to Section 544 or 548 ..., all claims recoverable under Sections 550 and 553 ..., all other claims under Chapter 5 of the Bankruptcy Code, and all claims (including claims arising in common law or in equity) against any person on account of any

debt or other claim owed to or in favor of the Debtor.

Joint Plan at § 2.1.06.

Section 15.6 of the Joint Plan then provided:

15.6. *Avoidance Claims and Rights of Action*

From and after the Confirmation Date, to the extent not otherwise adjudicated or settled prior to or as part of the Plan, all rights and/or claims of the Post Confirmation Debtors relating to Avoidance Actions are hereby preserved, retained, and may be pursued by New Elk Horn. Any recovery realized by New Elk Horn on account of such Avoidance Actions shall be distributed in accordance with the terms of this Plan.

All causes of action, claims against officers and directors both current and former, and all other causes of action or rights of the Debtors shall vest in New Elk Horn on the Confirmation Date, and New Elk Horn shall have the right to pursue all such claims. Any recovery realized by New Elk Horn on account of such causes of actions, claims or rights shall be distributed in accordance with the terms of this Plan.

Joint Plan at § 15.6.

Separately, the Joint Plan made this provision for retention of jurisdiction:

The Court shall retain and have jurisdiction over all matters arising out of or relating to the Chapter 11 Cases, including, without limitation, the following matters, and the Debtors shall retain all

---

**2.** This total includes over $120,000,000 paid to secured lenders, plus payroll and tax payments.

**3.** Multiple versions of the Joint Plan, Disclosure Statement and supporting documents and exhibits used inconsistent names for the Reorganized Debtor. The Agreed Order clarified that the correct identity of the Reorganized Debtor was The Elk Horn Coal Company, LLC. As explained from the bench at the hearing on the Motions to Dismiss, the Agreed Order simply clarified what was little more than typographical confusion. .

rights and powers with regard to such matters:

\* \* \* \*

To the extent not otherwise adjudicated or provided for or waived under the Plan, to determine and to adjudicate (1) all actions or matters under Section 502 and (ii) all Avoidance Actions.

Joint Plan at § 16.1(j).

The Disclosure Statement accompanying the Joint Plan stated in a subsection listing "Other Assets":

Although the real estate interests have been the subject of much of the attention during the bankruptcy proceedings, the Debtors own other assets. Those assets include certain accounts receivable, tax and other refunds, claims, personal property, and potential avoidance actions.

Disclosure Statement at ¶ III.B.(8).

The liquidation analysis attached to the Disclosure Statement did not list Avoidance Actions separately, but did include a line item for "other assets" valued at $924,000.

On January 23, 2004, the Reorganized Debtor filed 173 adversary proceedings to avoid preferential transfers under 11 U.S.C. § 547(a). After a consolidated pretrial conference on April 5, 2004, various defendants filed motions to dismiss or for summary judgment. The court ruled from the bench on all issues except the issue in this opinion.[4]

Citing *Browning v. Levy*, 283 F.3d 761 (6th Cir.2002), Defendants argue that avoiding the *res judicata* effect of a confirmed Chapter 11 plan requires a more express identification of preference actions than that set forth in the Joint Plan and Disclosure Statement. The Reorganized

Debtor responds that § 1123(b)(3) was satisfied when the category of preference actions was identified and reserved by the Plan and Disclosure Statement.

### DISCUSSION

 It is well recognized in this circuit that confirmation of a Chapter 11 plan has *res judicata* effect with respect to causes of action that became assets of the Chapter 11 estate.

As a general rule, the "[c]onfirmation of a plan of reorganization constitutes a final judgment in bankruptcy proceedings." *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.,* 973 F.2d 474, 480 (6th Cir.1992). Such confirmation by a bankruptcy court "has the effect of judgment by the district court and res judicata principles bar relitigation of any issues raised or that could have been raised in the confirmation proceedings." *In re Chattanooga Wholesale Antiques, Inc.,* 930 F.2d 458, 463 (6th Cir.1991). *Browning*, 283 F.3d at 772.

 For purposes of the *res judicata* effect of confirmation of a Chapter 11 plan, preference actions under § 547 are causes of action that "could have been raised" before confirmation. A trustee in bankruptcy has discretion to avoid and recover preferential transfers. *See* 11 U.S.C. §§ 547(b) & 550(a). Debtors in possession in Chapter 11 cases assume the same authority to recover preferential transfers. *See* 11 U.S.C. §§ 1101(1) & 1107(a). When a trustee or debtor in possession in a Chapter 11 case does not prosecute preference actions before confirmation, there is the potential that confirmation will preclude recovery of preferences.

 Because it is often not practical or even possible to litigate all preference actions before confirmation of a plan, it has

4. One Defendant has moved for leave to appeal the denial of all other grounds for dismissal. That motion is pending before the district court.

long been recognized that the Chapter 11 plan can reserve the right of the reorganized debtor to bring preference actions after confirmation, thereby overcoming the *res judicata* effect of confirmation. This power of preservation is codified in 11 U.S.C. § 1123(b)(3). Section 1123(b)(3) provides that a Chapter 11 plan may:

> provide for—(A) the settlement or adjustment of any claim or interest belonging to the debtor or to the estate; or (B) the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest[.]

11 U.S.C. § 1123(b)(3).

■ The statute is (obviously) silent with respect to the words necessary or sufficient to preserve causes of action like the preferences in these adversary proceedings. Legislative history is helpful as it reveals the purpose behind this statute.

Although there is little legislative history to § 1123(b)(3) itself,[5] the provision has deep roots. Section 1123(b)(3) of the 1978 Bankruptcy Code was preceded by § 216(13) of the Bankruptcy Act that provided:

> A plan of reorganization under this chapter—
>
> * * *
>
> (13) may include provisions for the settlement or adjustment of claims belonging to the debtor or to the estate; and shall provide, as to such claims not settled or adjusted in the plan, for their retention and enforcement by the trustee or, if the debtor has been continued in possession, by an examiner appointed for that purpose[.]

11 U.S.C. § 616(13) (repealed).

Section 216(13) was added to the bankruptcy laws in 1938 by The Chandler Act.

Bankruptcy Act of 1898 Amendments, Pub.L. No. 75–696, 52 Stat. 840, 895–96 (1938); S.REP. No. 75–1916 at 7 (9138); H.R.REP. No. 75–1409 at 42 (1938). Section 216(13) was intended to fill omissions in and to clarify § 77B of the Bankruptcy Act of 1898. *See* 6A COLLIER ON BANKRUPTCY § 10.22 (14th ed.1977). Section 216(13) was in keeping with the general theme of Chapter X to broaden the protection given to creditors and their rights to participate in corporate reorganization proceedings. *See generally* Rostow & Cutler, *Competing Systems of Corporate Reorganization: Chapters X and XI of the Bankruptcy Act,* 48 YALE L.J. 1334 (1938); Gerdes, John, *Corporate Reorganizations: Changes Effected by Chapter X of the Bankruptcy Act,* 52 HARV. L.REV. 1, 30 & n. 176 & n. 177 (1938–1939) (Section 216(13) resolved any doubt that causes of action could be retained for post confirmation suit for the benefit of the creditors.).

The legislative history of § 216(13) "made clear that its aim was to make possible the formulation and consummation of a plan before completion of the investigation and prosecution of causes of action such as those for previous insider misconduct and mismanagement of the debtor. Thus the statute was in furtherance of the purpose of preserving all assets of the estate while facilitating confirmation of plan." *DuVoisin v. East Tennessee Equity, Ltd. (In re Southern Indus. Banking Corp.),* 59 B.R. 638 (Bankr.E.D.Tenn.1986) (internal citation omitted). This concern that potential causes of action should be identified and preserved for the benefit of creditors was recognized by the Third Circuit in *In re Philadelphia & Reading Coal &*

---

**5.** *See* S.REP. No. 95–989 at 119 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5905 (noting generally that the provisions of subsection (b) of § 1123 were derived substantially from § 216 of Chapter X of the Bankruptcy Act).

*Iron Co.,* 105 F.2d 354, 355 (3d Cir. 1939):

> Any causes of action brought to light by such an investigation [by a trustee appointed by the court] should be taken into account in the plan of reorganization and might well have an important bearing upon the fairness of the pending plan if in fact it does not adequately preserve them and provide for their prosecution.... It is equally plain that it would not be fair to the individual creditors of a debtor for the court, before the preliminary report ... of the trustee or examiner ..., had been made, to permit the submission to them of a plan of reorganization which did not adequately preserve and provide for the prosecution of causes of action which might exist if such allegations of mismanagement and fraud were true.

*See also Brown v. Gerdes,* 321 U.S. 178, 182, 64 S.Ct. 487, 489, 88 L.Ed. 659 (1944) ("[T]he plan must provide, in furtherance of the purpose of the Act to protect the security holders against previous acts of mismanagement and to preserved all assets of the estate, for retention and enforcement by the trustee of all claims of the debtor of the estate not settled or adjusted in the plan.") (internal citations omitted). *See generally* Graham, Benjamin, *Fair Reorganizations Plans Under Chapter X of the Chandler Act,* 8 BROOK. L.REV. 137 (1938–1939) (Chapter X was designed to produce fairer and sounder treatment of all involved by taking control out of the hands of management and former controlling interests.).

When the 1978 Bankruptcy Code was drafted, what became § 1123(b)(3) was reworded to include the debtor or a "representative ... appointed for such purpose" as proper parties to bring retained actions and to expansively describe "any such claim or interest" as appropriate for reser-

vation. These changes reflect a clear "legislative intent to liberalize, rather than to constrict, the scope of the provision." *Southern Indus. Banking Corp.,* 59 B.R. at 642. Preservation of a debtor's causes of action for the benefit of creditors was the goal of the liberalization of language in 1978, as it was the original intent behind § 216(13) in 1938. *See Harstad v. First American Bank,* 39 F.3d 898, 902 (8th Cir.1994) ("Creditors have the right to know of any potential causes of action that might enlarge the estate.... [C]reditors are entitled to know if the debtor intends to pursue the preferences in post-confirmation actions. Compliance with § 1123(b)(3) gives notice of that intent."). As explained recently by the bankruptcy court in *Kmart Corp. v. Intercraft Co. (In re Kmart Corp.),* 310 B.R. 107, 120 (Bankr. N.D.Ill.2004): "[t]he disclosure and notice afforded by a section 1123(b)(3) retention provision ... is directed towards the estate's creditors, not the potential defendants on the reserved claims." (citing *In re Goodman Bros. Steel Drum Co.,* 247 B.R. 604, 608 (Bankr.E.D.N.Y.2000) (noting that under Bankruptcy Rule 3017, unless the potential preference defendants are also creditors, they are not entitled to notice of the plan confirmation hearing or to receive copies of the plan and disclosure statement)).

■ This review of legislative history illuminates the question at hand. Defendants would characterize § 1123(b)(3) as a "notice" provision of an altogether different sort: Notice to individuals that they are, or may be, a potential defendant in an action that the reorganized debtor will retain. Conceived in this way—contrary to its legislative history— § 1123(b)(3) would be appropriately interpreted to require language in a plan specific to the identity of the entities that are potential defendants in post confirmation actions. As the history of § 1123(b)(3) plainly shows, however, the notice at issue in § 1123(b)(3) is

not notice to potential defendants, it is notice to creditors generally that there are assets yet to be liquidated that are being preserved for prosecution by the reorganized debtor or its designee.

The silence in § 1123(b)(3) with respect to the language necessary or sufficient to preserve a particular claim or cause of

action has generated considerable disagreement in reported cases.[6] Even with respect to ubiquitous causes of action like preference avoidance, the courts are divided on the specifics required to comply with § 1123(b)(3).[7]

The Sixth Circuit has waded into this debate at least twice, though not in the

**6.** *See* (some discussed below) *Browning v. Levy*, 283 F.3d 761 ("Blanket Reservation" of all causes of action did not preserve malpractice and breach of duty actions against law firm.); *D & K Properties Crystal Lake v. Mutual Life Ins. Co. of N.Y.*, 112 F.3d 257 (7th Cir.1997) (Breach of contract action was not preserved by plan provision reserving "all causes of action existing in favor of the debtor."); *Micro–Time Mgmt. Sys., Inc. v. Allard & Fish, P.C. (In re Micro–Time Mgmt. Sys., Inc.)*, 983 F.2d 1067, 1993 WL 7524, at *5 (6th Cir. Jan. 12, 1993) (table decision) (Breach of duty action against trustee and malpractice claim against law firm that represented trustee were not preserved by "all causes of action which the debtor may choose to institute."), *cert. denied*, 510 U.S. 906, 114 S.Ct. 287, 126 L.Ed.2d 237 (1993); *Katz v. I.A. Alliance Corp. (In re Appel Corp.)*, 300 B.R. 564 (S.D.N.Y.2003) (Plan provision that indicated intent to pursue actions post confirmation combined with statement that the trustee was " 'investigating certain pre-petition acts or omissions' of Norman Katz 'which may give rise to claims by the Debtor' against the Katzes" sufficed to preserve the claims against debtor's former principles.); *Tracar, S.A. v. Silverman (In re American Preferred Prescription, Inc.)*, 266 B.R. 273 (E.D.N.Y.2000) (Reservation in plan that reorganized debtor could object to "any claim filed with the Bankruptcy Court" did not preserve objection to creditor's claim and did not avoid res judicata.); *In re Bleu Room Experience, Inc.*, 304 B.R. 309 (Bankr.E.D.Mich. 2004) ("[I]n the context of objections to claims, specifically objections to the dollar amount of a claim, the requirements of 11 U.S.C. § 1123(b)(3)(B) are satisfied so long as the Debtor's Plan of Reorganization reserves the right to object to claims."); *Official Committee of Unsecured Creditors of Crowley, Milner & Co. v. Callahan (In re Crowley, Milner & Co.)*, 299 B.R. 830 (Bankr.E.D.Mich.2003) (Parenthetical in omnibus reservation that mentioned "claims against officers and directors" was insufficient to reserve a post confirmation suit against debtor's former CEO for breaches of fiduciary duties. In contrast, the court observed, "[p]referential transfers are easily identified transactions, within a definite time frame, with easily identified potential defendants."); *Official Committee of Unsecured Creditors v. Qwest Communication Corp. (In re A.P. Liquidating Co.)*, 283 B.R. 456 (Bankr.E.D.Mich.2002) (Breach of contract and fraud claims were not preserved by plan provision that "[a]ll of the Debtor's Claims are expressly preserved for the benefit of the creditors[.]"); *In re Worldwide Direct, Inc.*, 280 B.R. 819 (Bankr.D.Del. 2002) (Liquidating trustee's action to subordinate stockholder's claim under 11 U.S.C. § 510(b) was preserved by plan and disclosure statement provisions that reserved the right to object to the amount and priority of claims.).

**7.** *See* (some discussed below) *P.A. Bergner & Co. v. Bank One, Milwaukee, N.A. (In re P.A. Bergner & Co.)*, 140 F.3d 1111 (7th Cir.) (Plan that abandoned "any avoidance or recovery actions under sections ... 547 ..., *other than any such actions that may be pending on [the effective date of the plan]*" preserved preference action pending at confirmation.), *cert. denied*, 525 U.S. 964, 119 S.Ct. 409, 142 L.Ed.2d 332 (1998); *Harstad v. First Am. Bank*, 39 F.3d 898, 902 (8th Cir.1994) (Retention of jurisdiction provision in confirmed plan that authorized bankruptcy court to determine "all causes of actions [sic] between Debtors and any other party, including but not limited to any right of Debtors to recover assets pursuant to the provisions of the Bankruptcy Code" did not preserve preference claims.); *Alary Corp. v. Sims (In re Associated Vintage Group, Inc.)*, 283 B.R. 549 (9th Cir. BAP 2003) ("We agree with the other courts that regard it as impractical and unnecessary to expect that a disclosure statement and plan must list each and every possible defendant

context of preference litigation. In *Browning*, after confirmation of a Chapter 11 plan, the successor to the debtor ("NW") intervened as plaintiff in a lawsuit against the debtor's majority shareholder. NW then joined the law firm Squires, Sanders & Dempsey ("SSD") as a defendant asserting causes of action for legal malpractice and breach of duty arising from SSD's representation of the debtor's majority shareholder before bankruptcy. SSD raised confirmation as a bar to the breach of duty and malpractice claims. The reorganized debtor responded that it had reserved the claims against SSD in this "omnibus reservation of rights" provision in the disclosure statement that accompanied the confirmed plan:

> In accordance with section 1123(b) of the Bankruptcy Code, the Company shall retain and may enforce any claims, rights, and causes of action that the Debtor or its bankruptcy estate may hold against any person or entity, including, without limitation, claims and causes of action arising under sections 542, 543, 544, 547, 548, 550 or 553 of the Bankruptcy Code.

*Browning*, 283 F.3d at 769.

The Sixth Circuit explained in *Browning* that "[r]es judicata does not apply where a claim is expressly reserved by the litigant by the early bankruptcy proceeding.... But a general reservation of rights does not suffice to avoid res judicata." *Browning*, 283 F.3d at 774. Citing *D & K Properties Crystal Lake v. Mutual Life Insurance Co.*, 112 F.3d 257 (7th Cir.1997), from the Seventh Circuit and an earlier unreported Sixth Circuit case, *Micro–Time Management Systems, Inc. v. Allard & Fish, P.C. (In re Micro–Time Management Systems, Inc.)*, 983 F.2d 1067, 1993 WL 7524, at *5 (6th Cir. Jan. 12, 1993) (table decision), *cert. denied*, 510 U.S. 906, 114 S.Ct. 287, 126 L.Ed.2d 237 (1993), the Sixth Circuit in *Browning* characterized the above quoted language as a "blanket reservation" that failed to preserve the causes of action against SSD:

> [The] blanket reservation was of little value to the bankruptcy court and the other parties to the bankruptcy proceeding *because it did not enable the value of [the] claims to be taken into account in the disposition of the debtor's estate.* Significantly, it neither names SSD nor states the factual basis for the reserved claims.... [The] blanket reservation does not defeat application of res judicata to its claims against SSD.

*Browning*, 283 F.3d at 775 (emphasis added).

and each and every possible theory."); *In re Kmart Corp.*, 310 B.R. at 120 (Categorical retention provision "provided all the notice to which Defendants (as creditors) were entitled, under section 1123(b)(3)(B), concerning preservation of the instant preference actions."); *Peltz v. Worldnet Corp. (In re USN Communications, Inc.)*, 280 B.R. 573 (Bankr.D.Del. 2002) (Plan provisions that "the Liquidating Trust will have the exclusive right to enforce any and all causes of action ... including ... all avoidance powers pursuant to Section[ ] ... 547[,]" was sufficient to preserve preference actions under § 1123(b)(3).); *Cohen v. TIC Fin. Sys. (In re Ampace Corp.)*, 279 B.R. 145 (Bankr.D.Del.2002) ("[A] general reservation in a plan of reorganization indicating the type or category of claims to be preserved should be sufficiently specific to provide creditors with notice that their claims may be challenged post-confirmation."); *Mickey's Enters., Inc. v. Saturday Sales, Inc. (In re Mickey's Enters., Inc.)*, 165 B.R. 188 (Bankr. W.D.Tex.1994) (Section 1123(b)(3)(B) protects defendants from being "blinded sided" by debtors who fail to fully disclose their intent to pursue avoidance actions.); *Amarex, Inc. v. Marathon Oil Co. (In re Amarex)*, 74 B.R. 378, 381 (Bankr.W.D.Okla.1987) (Section 1123(b)(3) satisfied when disclosure statement and plan said preference actions begun before confirmation passed to post-confirmation successor in interest.), *aff'd*, 88 B.R. 362 (W.D.Okla.1988).

Ironically for current purposes, § 547 is one of the sections listed in the "blanket reservation" rejected by the Sixth Circuit in *Browning*. Because the complaint in *Browning* alleged breach of duty and malpractice, the Sixth Circuit had no occasion to express an opinion whether the reservation of "causes of action arising under … § 547" was or was not sufficiently specific to preserve preference actions.

*Micro–Time*, the unpublished Sixth Circuit opinion discussed in *Browning*, sheds no additional light on the degree of specificity sufficient to preserve a preference action under § 1123(b)(3). Like *Browning*, *Micro–Time* involved a malpractice action against attorneys—in *Micro–Time*, the defendants were the attorneys for the Chapter 11 trustee. The preservation language in the *Micro–Time* plan was at least as general as the language rejected in *Browning*: "all causes of action which the debtor may choose to institute shall be vested with the debtor." *Micro–Time*, 1993 WL 7524, at *5. Without mention of § 1123(b)(3), the panel in *Micro–Time* held that the quoted language "had not expressly reserved any such suit." *Micro–Time*, 1993 WL 7524, at *6.

Nine years later in *Browning*, the Sixth Circuit found the "blanket reservation of rights that was deemed insufficiently specific" in *Micro–Time* was "essentially the same" as the generic reservation of causes of action in *Browning*. Perhaps the rule to draw from *Browning* and *Micro–Time* is that a general reservation of "causes of action" is not specific enough in the Sixth Circuit to avoid the *res judicata* effect of confirmation with respect to a malpractice action against counsel to the debtor or to the trustee.

In *D & K Properties*—the other case relied upon by the Sixth Circuit in *Browning*—the Seventh Circuit cited the Sixth Circuit's unpublished decision in *Micro–Time* to support its conclusion that a prepetition breach of contract action against a bank was not preserved by a plan that stated "the disbursing agent … shall enforce all causes of action existing in favor of the debtor." *D & K Properties*, 112 F.3d at 259. Again without mention of § 1123(b)(3), the Seventh Circuit explained:

The problem in *Micro–Time*, as in this case, was not that the reservation was not in writing, but that the claim sought to be reserved was not identified in the reservation. The identification must not only be express, but also the claim must be specific. A blanket reservation that seeks to reserve all causes of action reserves nothing.

*D & K Properties*, 112 F.3d at 261.

A year after *D & K Properties*, the Seventh Circuit revisited the specificity required to preserve causes of action from the *res judicata* effect of confirmation in the precise context of preference litigation. In *P.A. Bergner & Co. v. Bank One, Milwaukee, N.A.*, 140 F.3d 1111 (7th Cir.), *cert. denied*, 525 U.S. 964, 119 S.Ct. 409, 142 L.Ed.2d 332 (1998), the confirmed plan provided that the debtors "waive the right to prosecute and release any avoidance or recovery actions under sections … 547 *… other than any such actions that may be pending [on the effective date of the plan]."* *Bergner*, 140 F.3d at 1117. Bank One—the defendant in a preference action pending at the time of confirmation—argued that this reservation was not specific enough for purposes of § 1123(b)(3). The Seventh Circuit disagreed, relaxing its earlier reliance on *Micro–Time* to announce this specificity rule with respect to preference actions:

The language of § 1123(b)(3)(B) is broad enough to encompass both those situations where a debtor is trying to preserve a potential future claim about

which the affected party had no notice and the subset of claims that have already been filed (and are thus a matter of public record) but that remain unresolved.... While there might be some logic in requiring "specific and unequivocal" language to preserve claims belonging to the estate that have never been raised, the statute itself contains no such requirement. The courts that have spoken of the need for "specific" and "unequivocal" language have focused on the requirement that plans unequivocally retain claims of a given type, not on any rule that individual claims must be listed specifically.

*Bergner,* 140 F.3d at 1117. *See In re Kmart Corp.,* 310 B.R. at 124 ("*Bergner* stands for the proposition that plan provisions identifying causes of action by type or category are not mere blanket reservations. Therefore, categorical reservation can effectively avoid the *res judicata* bar. Dispensing with a requirement of cataloging claims by name comports with the Court's view in *Bergner* that section 1123(b)(3) does not require 'specific and unequivocal' identification.").

 *Browning* does not establish a general rule that naming each defendant or stating the factual basis for each cause of action are the only ways to preserve a cause of action at confirmation of a Chapter 11 plan. Read in the context of its history, § 1123(b)(3) protects the estate from loss of potential assets. It is not designed to protect defendants from unexpected lawsuits. The words sufficient to satisfy § 1123(b)(3) must be measured in the context of each case and the particular claims at issue: Did the reservation allow creditors to identify and evaluate the assets potentially available for distribution?

This is a close case. The Joint Plan is not silent about the preference actions. It defines Avoidance Actions to include "all

preference claims under Section 547." The Joint Plan expressly includes Avoidance Actions as retained causes of action that may be pursued by the Reorganized Debtor. The Disclosure Statement includes Avoidance Actions in the description of "Other Assets." The liquidation analysis annexed to the Joint Plan does not include a line item for preference actions. The Statements of Financial Affairs included a list of payments made within the preference period totaling $160,000,000. An estimate of what the Debtors realistically believed might be recoverable as preferences should have been included in the liquidation analysis. The Joint Plan is more specific than the disclosure statement in *Browning* but hardly a model for § 1123(b) analysis. Better language could have been drafted, but as written the Joint Plan preserved preference actions under § 547.

This outcome is influenced by the fact that preference litigation is fundamentally different than the legal malpractice and breach of duty claims in *Browning.* The universe of causes of action that become assets of Chapter 11 estates and that might be the objects of preservation at confirmation under § 1123(b)(3) is immense. But almost every debtor that comes into Chapter 11 has made payments to creditors during the 90 days or one year (insiders) before bankruptcy. Potential preference actions are often numerous (for example, $6 billion in *Kmart*) and require extensive accounting and prefiling preparation by the debtor or trustee. Preference litigation is not often initiated, and more rarely completed, before confirmation of a plan in Chapter 11 cases.

It is not practicable, especially in larger cases, for the debtor to identify by name in the plan or disclosure statement every entity that may have received a preferential payment. There is no common practice in

Chapter 11 cases of even attempting to do so. Nothing in § 1123(b)(3) suggests such specificity is required. The history of § 1123(b)(3) suggests just the opposite—that preserving the value of preferences for distribution to creditors after confirmation should be easily accomplished in the plan without magic words or typographical traps.

CONCLUSION

The Joint Plan adequately described preference actions as causes of action preserved for suit by the Reorganized Debtor after confirmation. An appropriate order will be entered.

**ORDER**

For the reasons stated in the Memorandum filed contemporaneously herewith, IT IS ORDERED, ADJUDGED and DE-CREED that the motions to dismiss are denied with respect to the § 1123(b)(3) issue remaining after this court's order of August 3, 2004.

IT IS SO ORDERED.