In re RAILWORKS CORPORATION, et al., Debtors.

Zvi Guttman, Litigation Trustee,

v.

Roy O. Martin, III, et al.; Harsco Corporation, et al.; Craig A. Simmons, et al., Defendants.

Bankruptcy Nos. 01–64463–SD to 01–64485–SD. Adversary Nos. 03–5781, 03–5784, 03–5795.

United States Bankruptcy Court, D. Maryland.

May 5, 2005.

ry Upton, Esquire, J. Grave Theus, Jr., Esquire, Gold, Weems, Bruser, Sues & Rundell, Alexandria, LA, Linda V. Donhauser, Esquire, Matthew G. Summers, Esquire, Miles & Stockbridge P.C., Baltimore, MD, for Defendants.

Mark Neal, Assistant U.S. Trustee, Office of the United States Trustee, Baltimore, MD, U.S. Trustee.

### MEMORANDUM OPINION DENYING DEFENDANTS' MOTION TO DISMISS COMPLAINT TO AVOID FRAUDULENT TRANSFERS (Corrected)

E. STEPHEN DERBY, Bankruptcy Judge.

#### I. Issues

Defendants' motions to dismiss raise two issues. First, does the Litigation Trustee under the Debtors' confirmed plan of reorganization have standing to bring these fraudulent conveyance avoidance actions under 11 U.S.C. § 544(b)? Second, does this court have subject matter jurisdiction over these actions after the plan has been confirmed and the bankruptcy estate terminated?

#### II. Facts

On September 20, 2001, Railworks Corporation and 21 of its affiliates (collectively the "Debtors") filed voluntary petitions for relief under Chapter 11. Following negotiations with various creditor constituencies, Debtors filed their Second Amended Plan of Joint Reorganization (the "Plan") on August 8, 2002. (Dkt. No. 1095). The Plan was confirmed on October 1, 2002. (Dkt. No. 1274).

Section 5 of the Plan creates a Litigation Trust to which certain claims will be conveyed.

Richard M. Goldberg, Erin E. Johnson, Shapiro, Sher, Guinot & Sandler, Baltimore, MD, for Zvi Guttman.

Douglas Robert Gorius, Esquire, Lori S. Simpson, Esquire, Bishop, Daneman & Simpson, LLC, Baltimore, MD, Brandon A. Brown, Esquire, Louis M. Phillips, Esquire, Gordon, Arata, McCollam, Duplantis & Eagan, L.L.P., Baton Rouge, LA, J. Stephen Simms, Esquire, Simms Showers LLP, Baltimore, MD, Randall L. Wilmore, Esquire, Bradley L. Drell, Esquire, Grego-

As of the Effective Date, if, and only if, Class 9 votes to accept the Plan, the Litigation Trust shall be created, all Litigation Trust Claims shall be transferred thereto and the Creditors' Committee shall be entitled to appoint the Litigation Trustee. If Class 9 votes to reject the Plan, the Litigation Trust shall not be created, and all claims or Causes of Action that were to constitute Litigation Trust Claims shall remain held by, and for the benefit of, the Reorganized Debtors. The Litigation Trust shall be funded by the Litigation Trust Financing. In no event shall the Debtors or the Reorganized Debtors have any obligation to fund the Litigation Trust or its activities beyond the Litigation Trust Financing. Proceeds from Litigation Trust Claims held by the Litigation Trust shall be distributed to holders of Class 9 Claims entitled to receive distributions from the Litigation Trust in accordance with the terms and conditions of the Litigation Trust Agreement, subject to applicable terms and conditions of the Plan.

Plan at § 5.25. Litigation Trust Claims are defined by the Plan to mean:

claims for the avoidance of any transfer by or obligation of the Estates or the Debtors under chapter 5 of the Bankruptcy Code or the recovery of value of such transfer, *provided, however,* that no such claim shall exist against a Creditor whose claim was paid pursuant to orders authorizing the assumption of executory contracts or unexpired leases and orders authorizing the payment of certain prepetition obligations to critical vendors and service providers.

Plan at § 1.85 (emphasis in the original). Class 9 Claims are Unsecured Claims. Plan at § 3.1. Since Class 9 voted to accept the Plan, the Litigation Trust was created. Section 4.10 of the Plan sets forth the treatment of allowed Unsecured Claims. In additional to a stock distribution, each holder of an allowed Unsecured Claim will receive a pro rata share of the net recoveries from Litigation Trust Claims.

(a)*(i) Treatment.* Each holder of an Allowed Unsecured Claim shall receive in full satisfaction, settlement and release, and discharge of and in exchange for such Allowed Unsecured Claim (A) its Pro Rata Share of the Class 9 Common Stock Distribution (subject to Section 4.10(a)(ii) below), and (B) its Pro Rata Share of any recoveries from Litigation Trust Claims held by the Litigation Trust. Notwithstanding the foregoing, if Class 9 votes to reject the Plan, then holders of Allowed Unsecured Claims shall not received any distributions under the Plan.

(ii) *Election to Receive Cash in Lieu of New Railworks Common Shares.* Any holder of an Allowed Unsecured Claim who votes in favor of the Plan may elect to make the Class 9 Cash Election and, subject to Section 6.11 of the Plan, receive the Class 9 Cash Consideration in full satisfaction, settlement and release, and discharge of and in exchange for such Allowed Unsecured Claim.

Plan at § 4.10.

The Litigation Trust Agreement states that the Litigation Trustee "shall have the sole authority and ability to prosecute, settle and/or abandon the Litigation Trust Claims...." Litigation Trust Agreement, Dkt. No. 1257 at 2. In accordance with its purpose to pursue Litigation Trust Claims for the benefit of the unsecured claimants, *id.* at 1, on September 17, 2003, the Litigation Trustee, on behalf of the Trust, initiated these proceedings pursuant to 11 U.S.C. § 544(b) and relevant state fraudulent transfer statutes. Most Defendants have raised similar arguments challenging the standing of the Litigation Trustee to

assert these claims and the authority of the bankruptcy court to hear them post-confirmation. For reasons of judicial economy, the court will address the standing and jurisdiction issues in a single opinion.

### III. Analysis

#### A. Contentions of the Parties

Defendants argue initially that the Litigation Trustee does not have standing to bring these fraudulent conveyance claims for three reasons. First, they contend that only a trustee has standing to assert these claims. For this contention, Defendants rely on *Hartford Underwriters Insurance Co. v. Union Planters Bank, N.A. (In re Hartford)*, 530 U.S. 1, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000). *In re Hartford* held that the language of 11 U.S.C. § 506(c), which states the "trustee" may recover from property securing an allowed claim "the reasonable ... costs ... of preserving ... such property...," created only a right in the trustee to recover such costs, thereby preventing an administrative creditor of the estate from recovering on such a claim. Defendants extrapolate this argument to apply to 11 U.S.C. § 544(b) claims. Section 544(b) also specifically authorizes only the "trustee" to bring the avoidance actions described therein on behalf of the estate.

Second, Defendants maintain that the court may not authorize the Litigation Trustee to assert claims under its equitable authority, because the bankruptcy estate has terminated and ceases to exist.

By raising this argument, Defendants' attempt to preempt Plaintiff's reliance on *Official Committee of Unsecured Creditors of Cybergenics Corp. v. Chinery (Cybergenics III)*, 330 F.3d 548 (3d Cir.2003)[1], which held that the bankruptcy court could use its equitable powers to authorize a creditors' committee to sue derivatively on behalf of the bankruptcy estate to recover certain fraudulent transfers. In *Cybergenics III* the creditors' committee sued while the debtor's case was pending and in the absence of a confirmed plan. Defendants conclude that any authority of this court to grant derivative standing terminated with the estate upon confirmation of Debtors' Plan.

Third, even if the court finds the Litigation Trustee has standing to assert the claims, either direct or derivative standing, Defendants argue that the instant claims are not within those allowed under 11 U.S.C. § 1123(b)(3), which provides that only claims belonging to the estate or to the debtor may be provided for in a plan of reorganization. For this argument, Defendants rely on the first *Cybergenics* opinion, *Official Committee of Unsecured Creditors of Cybergenics Corp. v. Chinery (Cybergenics I)*, 226 F.3d 237 (3d Cir.2000). *Cybergenics I* holds that a fraudulent conveyance claim is not a personal asset of the debtor, such that it was sold as part of a sale of nearly all of the debtor's assets. Rather, a fraudulent transfer claim belongs to a creditor under state law, and under 11 U.S.C. § 544(b) may only be pursued in a bankruptcy case by the trus-

---

**1.** This is the third in a series of cases brought on appeal to the Third Circuit regarding the same parties relating to the bankruptcy proceedings of Cybergenics Corporation. In the first case *Cybergenics I*, 226 F.3d 237 (3d Cir.2000), the court held that an avoidance action claim was not included in a sale of all of the debtor's personal assets. The second case, cited as 304 F.3d 316 (3d Cir.2002),

held that a creditors' committee could not be granted derivative standing. *Cybergenics III*, 330 F.3d 548 (3d Cir.2003) vacated the holding of *Cybergenics II* after rehearing en banc. It held that *In re Hartford Underwriters* did not foreclose a creditors' committee from being authorized to sue derivatively on behalf of the estate with the approval of the bankruptcy court.

tee or debtor in possession for the benefit of creditors.

Defendants' alternative ground for dismissal is that the court lacks subject matter jurisdiction over these complaints. If the court finds that the Litigation Trustee does have standing to bring these claims because the claims are properly within the scope of 11 U.S.C. § 1123(b)(3), Defendants argue that the bankruptcy court does not have jurisdiction to hear these proceedings since the estate has ceased to exist, and these matters are purely state law causes of action that are not related to the bankruptcy case. Plaintiff filed an omnibus response to the above arguments, in which he states that his standing is direct, not derivative, and that the Plan and the Trust Agreement provide for the continued retention of jurisdiction by the bankruptcy court.

### B. Standing of the Litigation Trustee

■■■ "The issue of standing 'is the threshold question in every federal case, determining the power of the court to entertain the suit.'" *In re Martin Paint Stores,* 199 B.R. 258 (Bankr.S.D.N.Y.1996) (citing *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975)). Standing is a fundamental component of the court's subject matter jurisdiction and is appropriately raised in a motion to dismiss under 12(b)(1). *Miller v. Pacific Shore,* 224 F.Supp.2d 977, 994 (D.Md. 2002); *Pye v. United States,* 269 F.3d 459, 466 (4th Cir.2001). "The particular inquiry is 'whether the particular plaintiff is entitled to an adjudication of the particular claims asserted.'" *Dixon v. Edwards,* 172 F.Supp.2d 702, 710 (D.Md.2001) (quoting *Allen v. Wright,* 468 U.S. 737, 752, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)). Standing, as it is commonly understood, is a party's right to make a legal claim or seek

judicial enforcement. *See Black's Law Dictionary* 1413 (7th ed.1999).

The analysis begins with the statutory language of 11 U.S.C. § 1123(b)(3). This section provides the following:

(b) Subject to subsection (a) of this section, a plan may—

 * * * * * *

(3) provide for—

(A) the settlement or adjustment of any claim or interest belonging to the debtor or to the estate; or

(B) the retention and enforcement by the debtor, the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest;

■■■ Courts have distilled essentially two separate requirements to establish standing under § 1123(b)(3). The first requirement is that the plan must retain the claims to be asserted post-confirmation. *See In re Mako,* 985 F.2d 1052, 1056 (10th Cir.1993); *Temex Energy, Inc. v. Kirschner (In re Amarex),* 96 B.R. 330, (W.D.Okla.1989). The second requirement is that if the person seeking to enforce the claim is a stranger to the estate, the person must be appointed and be a representative of the estate. *In re Mako,* 985 F.2d at 1056; *McFarland v. Leyh (In re Texas General Petroleum Corp.),* 52 F.3d 1330, 1334–35 (5th Cir.1995). However, there is also a statutorily explicit third requirement. The claims that are being reserved by the plan for later enforcement and adjudication must belong to the estate or to the debtor. That is, the plan may only preserve those claims that a trustee in bankruptcy, or a debtor in possession, could have asserted prior to confirmation.

Defendants have challenged only whether Plaintiff has satisfied the second and third requirements. Nevertheless, because standing directly impacts whether

the court has subject matter jurisdiction, all three requirements under this provision will be evaluated. As explained below, the court concludes that all three elements have been met: 1) the plan retained the fraudulent transfer claims; 2) the Litigation Trustee was appointed and is a representative of the estate; and 3) these claims belong to the estate. Consequently, the Litigation Trustee has standing to bring the fraudulent conveyance claims.

### 1) The Plan Retains the Claims.

Courts are split over the degree of specificity required for a plan to retain a cause of action. *USN Communications, Inc. v. Worldnet (In re USN Communications, Inc.)*, 280 B.R. 573, 589 (Bankr.D.Del.2002) ("The courts are divided on how specific the language of retention and enforcement must be under § 1123(b)(3)(B) to adequately reserve a cause of action for adjudication at a later date".). See also *Fleet National Bank. v. Gray (In re Bankvest)*, 375 F.3d 51 (1st Cir.2004), which discusses the holdings of various courts with regard to the degree of specificity required to effectively preserve claims under 11 U.S.C. § 1123(b)(3). This requirement can be regarded as providing the notice necessary for proper disclosure. *Cohen v. TIC Fin. Sys. (In re Ampace Corp.)*, 279 B.R. 145, 157–160 (Bankr.D.Del.2002) (in determining whether a Liquidating Trust, to which avoidance actions were transferred as of the effective date of the plan, was barred from pursuing avoidance action claims post-confirmation by principles of res judicata, the court held that a general statement purporting to reserve claims in the plan and disclosure statement was sufficient to meet notice requirements). *See also Harstad v. First. Am. Bank (In re Harstad)*, 39 F.3d 898, 903 (8th Cir.1994) ("[w]e view § 1123(b)(3)(B) as, at least in part, a notice provision. Creditors have the right to know of any potential causes of action that might enlarge the estate— and that could be used to increase payment to the creditors.... Compliance with § 1123(b)(3) gives notice of that intent."); *In re Kmart Corporation*, 310 B.R. 107, 120 (Bankr.N.D.Ill.2004).

Some courts have taken the view that if a plan does not expressly retain a claim that could have or should have been addressed at confirmation, the parties are barred by res judicata from later asserting those claims. *See, e.g., Browning v. Levy (In re Browning)*, 283 F.3d 761, 774–75 (6th Cir.2002); *D & K Props. Crystal Lake v. Mutual Life Ins. Co.*, 112 F.3d 257 (7th Cir.1997). In *Browning* the court explained:

> As a general rule, the "[c]onfirmation of a plan of reorganization constitutes a final judgment in bankruptcy proceedings." *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 480 (6th Cir.1992). Such confirmation by a bankruptcy court "has the effect of a judgment by the district court and res judicata principles bar relitigation of any issues raised or that could have been raised in the confirmation proceedings." *In re Chattanooga Wholesale Antiques, Inc.*, 930 F.2d 458, 463 (6th Cir.1991).

*In re Browning*, 283 F.3d at 772. The court held, *inter alia*, that a blanket reservation of causes of action in a confirmed plan did not defeat application of the doctrine of res judicata. *Id.* at 774–75. The court commented that neither was the defendant named nor the factual basis of the reserved claims stated, and the blanket reservation did not "enable the value of NW's claims to be taken into account in the disposition of the debtor's estate." *Id.* at 775.

■ Suggesting that all blanket reservations reserve nothing, however, overstates the reservation that is required to

preserve causes of action from the res judicata effect of an order confirming a plan of reorganization. While 11 U.S.C. § 1141(b) provides that "confirmation of a plan vests all of the property of the estate in the debtor," it does so "[e]xcept as otherwise provided in the plan or the order confirming the plan." Section 1123(b)(3) expressly permits a plan to provide for the retention of claims belonging to the estate by a representative of the estate appointed for that purpose. A reservation of claims that satisfies these two sections should prevent application of the doctrine of res judicata. A reservation is sufficient if it reserves a category or type of claim, and it is not required that individual claims and specific defendants be specified. See *In re Bankvest*, 375 F.3d at 59; *P.A. Bergner & Co. v. Bank One, Milwaukee, N.A. (In re P.A. Bergner & Co.)*, 140 F.3d 1111, 1117 (7th Cir.1998); and *Teligent, Inc. v. BLR Services SAS (In re Teligent, Inc.)*, 307 B.R. 744, 747–48 (Bankr.S.D.N.Y.2004), where a reservation by category was assumed to be effective. A reservation by category permits adequate disclosure to be made for creditors.

■ The underlying effect of 11 U.S.C. § 1123(b)(3) is to expedite confirmation and the rehabilitation of the debtor

§ 1123(b)(3)(B) serves the useful function of allowing confirmation of a plan before possible claims against others have been fully investigated and pursued. To say confirmation must await a final decision of all possible preference complaints would either inordinately delay confirmation, with all the attendant expense, or result in a windfall in favor of those who received preference transfers.

*In re Amarex*, 74 B.R. 378, 380 (Bankr. W.D.Okla.1987) *aff'd* 88 B.R. 362 (W.D.Okla.1988). *Accord In re Kmart Corporation*, 310 B.R. at 119–20. There-

fore, the better reasoned approach is one that recognizes that without retention of the cause of action, the claim would revert to the debtor, the creditor, or otherwise cease to accrue to the benefit of all creditors in the bankruptcy case. This consequence, in combination with the need to expedite confirmation, cautions toward a more general reservation, rather than one more narrowly tailored, so long as the plan is specific enough to give adequate notice of the reservation to creditors of the debtor's estate. *See In re Kmart Corp.*, 310 B.R. at 119–126. How general a reservation would pass muster need not be resolved here, because the reservation in Debtors' confirmed plan of the subject causes of action was more than adequate.

■ The terms of Debtors' confirmed plan establish that the Plan retained all claims arising under Chapter 5 of the Bankruptcy Code, including claims for avoidance of fraudulent transfers. This element has thus been satisfied. *In re Harstad*, 39 F.3d at 903; *In re Ampace*, 279 B.R. at 159. First, under "Means for Implementation", Section 5.25 sets forth that if the Unsecured Creditors (Class 9) vote for the Plan, "the Litigation Trust shall be created, [and] all Litigation Trust Claims shall be transferred [to the Trust]." The Litigation Trust Claims specifically include causes of action under Chapter 5 of the Bankruptcy Code. Plan at § 1.85, *supra*. The Litigation Trustee is authorized to prosecute the Litigation Trust Claims. Litigation Trust Agreement, §§ 8.1(A), 8.2(a), Dkt. No. 1297.

Additionally, the Plan specifically retains all causes of action under Section 11.9 on behalf of the Debtors' estates, including those that may be asserted by the Litigation Trustee.

(a) *Retention of Causes of Action.* Except as specifically provided herein or in the Confirmation Order, nothing con-

tained in the Plan or the Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights, claims or Causes of Action that the Debtors, the Reorganized Debtors or the Litigation Trustee, as the case may be, may have or which the Reorganized Debtors *or the Litigation Trustee, as the case may be, may choose to assert on behalf of the Estates* in accordance with any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including, without limitation, (i) any and all claims against any person or entity, to the extent such person or entity asserts a crossclaim, counterclaim, and/or Claim for setoff which seeks affirmative relief against the Debtors, the Reorganized Debtors, their officers, directors, or representatives, *(ii) the avoidance of any transfer by or obligation of the Estates or the Debtors under chapter 5 of the Bankruptcy Code or the recovery of value of such transfer,* (iii) the turnover of any property of the Estates, or (iv) any Reserved Cause of Action.

Plan at § 11.9 (emphasis supplied). Furthermore, Section 11, entitled "Effect of Confirmation", includes section 11.1 Vesting of Assets. This section provides that under § 1141(b) and (c) all property of the estate will re-vest in the reorganized debtor, except, *inter alia,* "the Litigation Trust Claims transferred to the Litigation Trust." Finally, under Section 12(r) of the Plan, this court retains jurisdiction to hear and determine Litigation Trust Claims.

The Plan thus expressly retains the claims of the Litigation Trustee in these adversary proceedings.

**2) *The Litigation Trustee Was Appointed and Is The Representative of the Estate.***

"Under Section 1123(b)(3)(B), a party other than the debtor or the trustee that seeks to enforce a claim must show (1) that it has been appointed, and (2) that it is a representative of the estate." *In re Texas General Petroleum Corp.,* 52 F.3d at 1334; *In re Mako,* 985 F.2d at 1054. The first showing is satisfied if the court has confirmed a plan that provides for the appointment of a representative to enforce the claim. *In re Mako,* 985 F.2d at 1054 (citing *In re Sweetwater,* 884 F.2d 1323, 1326 (10th Cir.1989)). The second showing "requires the court to decide 'whether a successful recovery by the appointed representative would benefit the debtor's estate and particularly, the debtors unsecured creditors.'" *Id.,* quoting *In re Sweetwater,* 884 F.2d at 1327. As stated in *In re Sweetwater* and relied on in *In re Mako,*

> The fundamental principle underlying this requirement is that 'post-petition avoidance actions should be pursued in a manner that will satisfy the basic bankruptcy purpose of treating all similarly situated creditors alike; one or more similarly situated creditors should not be able to pursue an avoidance action for their exclusive benefit.'

*In re Mako,* 985 F.2d at 1056, quoting *In re Sweetwater,* 884 F.2d at 1328.

The second requirement is to ensure that the person seeking to enforce the claim will not violate the longstanding prohibition against an individual creditor recovering a debt for his own personal gain. This protection is provided during the pendency of the case by the trustee, who is acting as a representative of the estate and for the benefit of creditors in his fiduciary capacity. Because the estate would normally cease to exist post-confirmation, *see Brown v. GMAC (In re Brown),* 300 B.R. 871, 875–76 (D.Md.2003), a person seeking to enforce a claim after confirmation might be pursuing individual gain. *See, e.g., Harstad v. First American Bank,* 39 F.3d

898, 903–04 (8th Cir.1994). *Cf. In re Amarex*, 96 B.R. 330, 334 (W.D.Okla.1989) ("The primary concern is whether a successful recovery by the appointed representative would benefit the debtor's estate and particularly, the debtor's unsecured creditors... [I]n instances in which the purported representative has been found to be a 'stranger' to the bankruptcy estate, such that a successful recovery would only benefit the representative and not the estate or its unsecured creditors, courts have concluded that § 1123 does not authorize such a party to prosecute a claim, in spite of a provision in a plan of reorganization that authorizes the representative to do so."). The Bankruptcy Code specifically requires that the stranger to the estate enforcing these claims do so as a representative of the estate, and courts have interpreted this as a requirement that any recovery benefit the estate or unsecured creditors. *Id.; Texas General Petroleum Corp. v. Evans (In re Texas General Petroleum Corp.)*, 58 B.R. 357, 358 (Bankr.S.D.Texas 1986); *In re Sweetwater*, 884 F.2d at 1328–29. As noted above, although normally the estate would terminate after confirmation, 11 U.S.C. § 1123(b)(3) expressly allows the estate to exist with respect to those claims that are preserved by the plan, and the vestige of the estate exists in the representative, who takes on a capacity similar to that of a trustee. *Cf. In re Teligent*, 307 B.R. at 747.

■■■ Here, the Plan specifically creates the Litigation Trust to hold, and through the Litigation Trustee, to prosecute the Litigation Trust Claims, the recoveries from which are to pay the Unsecured Claims in Class 9. Consequently, the Litigation Trustee represents the estate by assuming the obligations to prosecute the instant claims for the benefit of unsecured creditors. Both tests are satisfied to establish standing under 11 U.S.C. § 1123(b)(3).

Defendants argue that only a bankruptcy trustee can assert avoidance action claims, so a post-confirmation representative may not. However, this contention is not correct. First, because both a bankruptcy trustee and a post-confirmation representative, the Litigation Trustee, derive their standing from the same source, namely, their capacity as representatives of the estate, the post-confirmation Litigation Trustee possesses the same standing as that of a trustee during the existence of the estate. Invoking the provisions of § 1123(b)(3)(B) preserves the *status quo ante* of the existence of pre-confirmation causes of action. The clarification of the types of claims that can be preserved, i.e. those belonging to the estate or those that belong to the debtor, is a reflection and acknowledgment of all claims that a trustee may bring as they exist during the bankruptcy case.

Second, Defendants incorrectly apply the holding of *In re Hartford* to the case at hand. In *Hartford*, the Court considered "whether petitioner—an administrative claimant–is a proper party to seek recovery under § 506(c)." *In re Hartford*, 530 U.S. at 5–6, 120 S.Ct. at 1947. While *Hartford* emphasizes that where the Bankruptcy Code indicates a specific person, that person is the only one authorized to seek direct relief without permission or authority from the court, this holding is premised on a plain reading of the statutory language. *In re Hartford*, 530 U.S. at 6, 120 S.Ct. 1942 ("Congress 'says in a statute what it means and means in a statute what it says there,' "). The same analysis is applicable to the case *sub judice*, where the Litigation Trustee is asserting a direct right to relief based on the specific authority granted under § 1123(b)(3)(B). However, unlike *Hart-*

*ford,* use of this provision is not limited to the trustee, but rather, this provision explicitly authorizes a stranger to the estate to assert claims normally reserved to the trustee. *Cf. In re Furrs,* 294 B.R. 763, 769 (Bankr.D.N.M.2003). Consequently, there is no reason to read *Hartford* as disturbing the prior holdings and substantial authority allowing avoidance actions to be brought post-confirmation by a representative of the estate appointed pursuant to a plan, *see, e.g. In re Texas General Petroleum,* 52 F.3d at 1334–35 ("1123(b)(3)(B) allows a trustee to transfer avoidance powers to a party other than the debtor or the trustee"); *Citicorp Acceptance Co. v. Robison (In re Sweetwater),* 884 F.2d 1323 (10th Cir.1989); *Briggs v. Kent (In re Professional Inv. Properties of Am.),* 955 F.2d 623, 626 (9th Cir.1992).

Although both Defendants and Plaintiff raise *Cybergenics III* (see note 1 above), the attempt to draw an analogy is inappropriate. In *Cybergenics III,* the court held that it was within the equitable powers of the bankruptcy court to grant a creditor's committee the requisite standing to pursue avoidance actions during the pendency of the case. Unlike *Cybergenics III,* the motions to dismiss this proceeding must address a specific statutory provision that allows for third parties to bring claims post-confirmation when properly authorized. There is no need to rely on equitable principles when there is a direct grant of standing.

 Defendants rely on *Cybergenics I* to assert that these claims do not belong to the debtor or to the estate because the claims belong to creditors under state law. This argument misses the mark. Although state law may be relevant in determining who may hold a property interest in the claim, federal law supercedes a creditor's right to bring these particular claims. " 'Where rights or duties are statutory in origin, Congress has broad power to define the classes of person who may be entitled to enforce them. Implicit in the congressional power to create rights and duties is the power to define the classes of persons who may enforce them.' " *In re Furrs,* 294 B.R. at 770, citing Wm. A. Fletcher, *The Structure of Standing,* 98 Yale L.J. 221, 223–23 (1988) and *In re Godon,* 275 B.R. 555, 564 (Bankr.E.D.Cal.2002). *See also Am. Bankers Ins. Co. v. Maness,* 101 F.3d 358, 363 (4th Cir.1996) (look to state law to determine property rights unless there is some countervailing federal interest). Congress demonstrated its intention by specifically incorporating these causes of action into the Bankruptcy Code, not only giving the trustee standing and the ability to assert the cause of action only for the benefit of the estate, but taking away from creditors any right to recover during the pendency of the case.

At least one Defendant argues that allowing these claims to be asserted by a representative other than a trustee, a representative who would not have the same fiduciary obligations to the estate and not be subject to the supervision of the bankruptcy court, would unleash a frenzy upon the court of unmarshaled claims and unnecessary litigation abusing the right to recover under Section 544(b). Several courts have raised similar concerns. *See, e.g., Hartford,* 530 U.S. at 12–13, 120 S.Ct. 1942 ("In particular, expanding the number of parties who could use § 506(c) would create the possibility of multiple administrative claimants seeking recovery under the section.... Allowing recovery to be sought at the behest of parties other than the trustee could therefore impair the ability of the bankruptcy court to coordinate proceedings, as well as the ability of the trustee to manage the estate."); *In re Transcolor,* 296 B.R. 343 (Bankr.D.Md. 2003) ("[t]o allow selected creditors to art-

fully plead their way out of bankruptcy court would unravel the bankruptcy process and undermine an order distribution of the bankruptcy estate. Reserving the action for the trustee maintains the integrity of the bankruptcy proceeding and ensures that individual creditors cannot hijack the bankruptcy process."). However, this view gives too little recognition to the ability of a court to regulate and govern the parties before it in adversarial litigation. The entire premise under § 1123(b)(3)(B) is that the bankruptcy court would, before confirming the plan in which this very right is reserved, allow the court in the first instance to make a determination as to whether an appropriate representative has been appointed or whether the claims sought to be avoided are frivolous or untenable. *Cf. In re Spaulding Composites Co., Inc.*, 207 B.R. 899, 904 (9th Cir. BAP 1997) (a debtor in possession may consent to an unsecured creditors' committee pursuing litigation "so long as the bankruptcy court exercises its judicial oversight and verifies that the litigation is indeed necessary and beneficial."). In addition, the close identity of interests of the Litigation Trustee to the trustee or a debtor in possession in its obligation to pursue these actions, provides additional protection. *See In re Commodore Int'l Ltd.*, 262 F.3d 96, 99 (2d Cir.2001) (citing *In re Spaulding Composites Co., Inc.*, 207 B.R. at 904). Lastly, the statute of limitations provides an additional measure of control on possible abuses.

Overall policy considerations of Bankruptcy Code to ensure that creditors receive their due is only advanced, and is not obfuscated, by a general policy allowing for Litigation Trustees to pursue avoidance actions post-confirmation pursuant to a plan. The plan is way of allocating the value of the estate among the creditors based on a priority determined by the legislature. The preservation of claims serves this main function by creating another way in which value is realized for the estate without delaying confirmation of the plan and the pendency of the bankruptcy proceedings unnecessarily. *See In re Kmart Corp.*, 310 B.R. at 120 ("[w]ithout the ability to reserve the estate's claims for later enforcement, afforded by section 1123(b)(3), the debtor may have to adjudicate every claim to finality prior to plan confirmation or risk losing that claim."); Elizabeth Warren and Jay Westbrook, *Selling The Trustee's Powers*, 23–Sep. Am. Bankr.Inst. L.J. 32 (2004). A plan might otherwise provide for some estimate of contingent value, which introduces uncertainty for all creditors. The practice also allocates the expenses and benefits associated with pursuing these claims solely to the classes of creditors who stand to gain, without risking the recoveries of others.

### 3) The Claims Belong to the Estate

Avoidance claims are not within the definition of property of the bankruptcy estate, because they do not represent an interest of the debtor in property. *See* 11 U.S.C. § 541(a). Rather, they are rights that the trustee and a debtor in possession are given in a bankruptcy case. *Id.* at §§ 544, 545, 547, 548, 549, 550. Nevertheless, property that the trustee recovers from an avoidance claim becomes property of the bankruptcy estate. *Id.* at §§ 541(3) and (7). Whether avoidance claims are property of the estate, however, is not determinative here, as some Defendants' suggest. Section 1123(b)(3) is applicable to a claim or interest "belonging to" the estate. *Id.* at § 1123(b)(3)(A). Belonging to the estate appears to be a more flexible term than property of the estate, and to readily encompass an avoidance claim the trustee can assert to obtain recoveries "for

the benefit of the estate." *See id.* at § 550(a).

■■■ A claim belongs to the estate when it is one that is reserved to the trustee by operation of the Bankruptcy Code. Claims that belong to the estate encompass both those claims that are property of the estate, and those that arise under the substantive provisions of the Bankruptcy Code. A claim may belong to the estate even though it is not yet property of the estate.

■■ The Bankruptcy Code specifically allows the trustee, or the debtor in possession to assert certain causes of action during the case. *See Delgado Oil Company, Inc. v. Torres,* 785 F.2d 857 (10th Cir. 1986); *Browning v. Levy,* 283 F.3d 761, 772–73 (6th Cir.2002); *Wood v. Wood,* 825 F.2d 90, 96 (5th Cir.1987); *In re Housecraft Industries,* 310 F.3d 64, 70 (2d Cir. 2002). The authority of the trustee to assert these claims arises from the provisions of the Code that specifically grant standing to the trustee. *In re Teligent,* 307 B.R. at 747 ("A trustee's standing to pursue litigation comes from three sources—the debtor, the creditors and the Bankruptcy Code."). The causes of action that the trustee may assert are not personal to him, but belong to the estate itself. Thus, the Bankruptcy Code establishes causes of action that belong to the estate, and the Code gives the trustee the authority as the estate's representative to pursue these claims for the benefit of creditors during the case. Here, the fraudulent conveyance avoidance claims that are being asserted are ones that belong to the estate because they arise under the substantive provisions of the Bankruptcy Code, namely § 544(b), and such claims are normally reserved to the trustee, *see Nat'l Am. Ins. Co. v. Ruppert Landscaping Co.,* 187 F.3d 439 (4th Cir.1999).

In conclusion, all three requirements have been met to establish the Litigation Trustee's standing under 11 U.S.C. § 1123(B)(3). Debtors' confirmed Plan specifically retained fraudulent conveyance claims, the Litigation Trustee was appointed pursuant to the Plan and is a representative of the estate, and the fraudulent transfer claims belong to the estate because they were reserved to the debtors in possession during administration of their bankruptcy cases and transferred by the Plan to the Litigation Trustee.

### C. Post–Confirmation Jurisdiction

Debtors' confirmed Plan contemplates that the Litigation Trust Claims will not revest with confirmation of the plan, and rather specifically sets forth the retention of these causes of action. Plan at § 11.9. Jurisdiction is specifically retained in the bankruptcy court to determine litigated matters pending on or commenced after confirmation and to hear and determine disputes regarding the Litigation Trust Claims and activities of the Litigation Trust. Plan at §§ 12(b) and 12(r).

■■■ A bankruptcy court may not create its own jurisdiction over a matter through a plan of reorganization. *See In re Resorts International,* 372 F.3d 154, 161 (3d Cir.2004). "If there is no jurisdiction under 28 U.S.C. § 1334 or 28 U.S.C. § 157, retention of jurisdiction provisions in a plan of reorganization or trust agreement are fundamentally irrelevant." *Id.* Although 28 U.S.C. § 1334 creates a discretionary power in the district courts to refer bankruptcy matters to bankruptcy courts, "courts 'routinely' refer most bankruptcy cases to the bankruptcy court." *Id.* at 162, *quoting Torkelsen v. Maggio (In re Guild & Gallery Plus, Inc.),* 72 F.3d 1171, 1175 (3d Cir.1996). However, the "jurisdictional analysis shifts ... after confirmation of a bankruptcy plan." *In re Brown,*

300 B.R. 871, 875 (D.Md.2003). The reason is because once the plan has been confirmed, the bankruptcy estate ceases to exist, leaving post-confirmation jurisdiction limited to matters concerning the implementation or execution of a confirmed plan. *Id.* at 875–76. *See also Goodman v. Phillip Curtis Enter., Inc.,* 809 F.2d 228, 232 (4th Cir.1987). Here the implementation of the payment of unsecured creditors through claims prosecuted by the Litigation Trustee is precisely at issue, and falls squarely in the realm of limited jurisdiction that a bankruptcy court may hear. In addition, this type of proceeding, avoidance of a fraudulent transfer, is deemed a core-proceeding under the Bankruptcy Code. 28 U.S.C. § 157(b)(2)(H). A core proceeding is one which invokes a substantive right or could only arise in the context of a bankruptcy case. *In re Brown,* 300 B.R. at 875 (citing *Official Dalkon Shield Claimants' Committee v. Mabey (In re A.H. Robins, Inc.),* 880 F.2d 769, 776 (4th Cir.1989)).

 Even if this matter were not considered a core proceeding because of the termination of the bankruptcy estate, it is still sufficiently related to the bankruptcy case to warrant jurisdiction. *See A.H. Robins Co. v. Piccinin,* 788 F.2d 994, 1002, n. 11 (4th Cir.1986) (citing *Pacor, Inc. v. Higgins,* 743 F.2d 984 (3d Cir.1984)); *In re Resorts Int'l,* 372 F.3d at 164. "The essential inquiry appears to be whether there is a close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction over the matter." *In re Resorts,* 372 F.3d at 166–67. In *Resorts,* the court considered whether a malpractice claim against an accounting firm providing advice to a Litigation Trust established under debtor's confirmed plan could be brought in the bankruptcy court post-confirmation. The court determined under the test stated above that there was an insufficient nexus between the malpractice claim and the bankruptcy estate or plan. The court, as part of its analysis, makes the following observation:

> Whether a matter has a close nexus to a bankruptcy plan or proceeding is particularly relevant to situations involving continuing trusts, like litigation trusts, where the plan has been confirmed, but former creditors are relegated to the trust res for payment on account of their claims. To a certain extent, litigation trusts by their very nature maintain a connection to the bankruptcy even after the plan has been confirmed. The question is how close a connection warrants post-confirmation bankruptcy jurisdiction. Matters that affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus. Under those circumstances, bankruptcy court jurisdiction would not raise the specter of "unending jurisdiction" over continuing trusts.

*Id.* at 167. In *Resorts* the basis of the claim was for work performed by the accounting firm for the Litigation Trust, and not for the debtor, or the debtor-in-possession. Although the "Litigation Trust was created in part so that the Plan could be confirmed and the debtor freed from bankruptcy court oversight without waiting for the resolution of the litigation claims," *id.* at 169, this was not one of the litigation claims. This is a claim arising solely out of alleged misconduct between the accounting firm against the trust post-confirmation. As such, it opened the specter of unending jurisdiction. *Resorts* is much unlike the situation here, where the Litigation Trust Claims are pre-petition claims that could have been asserted by the debtor-in-possession directly prior to confirmation of Debtors' Plan.

**724**

Given the claim for avoidance of a fraudulent conveyance is a cause of action that is part of the bankruptcy court's core jurisdiction, and that these claims affect the "implementation, execution or administration of the confirmed plan", adjudication of these proceedings falls within the jurisdiction of this Court.

### IV. Conclusion

Section 1123(b)(3)(B) creates the requisite standing in the Litigation Trustee as representative of the estate to assert these state law fraudulent conveyance actions because these causes of action belong to the bankruptcy estate. During the pendency of the bankruptcy case, any state law cause of action for recovery of a fraudulent conveyance belongs to the bankruptcy estate, and may be asserted by the trustee. The cause of action that state law creates is subsumed by Section 544(b) inheres and inures for the benefit of the estate, and thus belongs to the estate. By invoking Section 1123(b)(3)(B) and reserving these claims to a post-confirmation representative, the Litigation Trustee is asserting these claims for the benefit of unsecured creditors. The jurisdiction of this court continues because these causes of action are part of the court's core jurisdiction, and they were preserved in Debtors' Plan. The court retains jurisdiction over those claims both as a vestige of the estate and because these claims affect the implementation of the plan.

Therefore, the motions to dismiss will be denied by separate order entered in each adversary proceeding.